## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| THE ESTATE OF CHRISTOPHER COOPER, and SARA DIMOND, As The Dependent Administrator Of The Estate of Christopher Cooper, DECEDENT, and KENNIA ALEJANDRA GENET ULLOA, Individually And As The Surviving Spouse of Christopher Cooper and Wrongful Death Beneficiary Of The Estate of Christopher Cooper, ) ) ) ) ) ) ) ) ) ) ) ) | Civil Division<br><br>No. 1:23-cv-1516<br><br><br>**JURY TRIAL DEMANDED** |

              Plaintiffs, )

   v.

STRYKER CORPORATION and
RONALD SKINNER,

          Defendants.

## COMPLAINT

AND NOW COMES Plaintiffs The Estate of Christopher Cooper and Sara Dimond, as the Decedent Administrator of The Estate of Christopher Cooper and surviving sister of Christopher Cooper, and Kennia Alejandra Genet Ulloa, individually and as the surviving spouse of Christopher Cooper and wrongful death beneficiary of The Estate of Christopher Cooper, by and through the undersigned counsel, and bring this Complaint seeking legal and equitable relief for unlawful disability discrimination, retaliation, hostile work environment, and wrongful termination against Defendant Stryker Corporation ("Stryker" or "Company" or "Defendant") in violation of the Americans with Disabilities Act of 1990 ("ADA"), the ADA Amendments Act of 2008 ("ADAAA"), the Family and Medical Leave Act of 1993, 29 U.S.C. Section 2601 et. seq. ("FMLA"), and pendent state law claims arising under the provisions of the Texas Commission

on Human Rights Act ("TCHRA"), as well as a wrongful death action against Ronald Skinner, individually, stating as follows:

<u>**JURISDICTION AND VENUE**</u>

1.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1391.  This action is authorized and instituted pursuant to the ADA, ADAAA, FMLA and TCHRA.

2.     The unlawful employment practices and harassment were committed by the Defendant in or around Austin, Texas, where Plaintiff worked for Defendant in or around Austin, Texas as a sales consultant.  Therefore, the United States District Court for the Western District of Texas is the proper venue for the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §1391(b).

3.     Plaintiff timely exhausted all administrative remedies by filing a charge on August 30, 2023, with the United States Equal Employment Opportunity Commission ("EEOC") at Charge No. 451-2023-04277 after Mr. Cooper was terminated on March 10, 2023 by Stryker and became deceased on March 11, 2023.  Plaintiff's Charge was dual filed with the Texas Workforce Commission and is incorporated by reference as if fully set forth herein. On September 18, 2023 the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue" letter) advising the right to bring this action.  Plaintiff has filed the instant suit within 90 days of receipt of the Right to Sue letter.

4.     Defendant is an employer within the meaning of the ADA, ADAAA, FMLA and TCHRA.

5.     Plaintiffs further bring this action pursuant to Texas' wrongful death statute under Tex. Code Ann. § 71.004 and pursuant to Texas' Survival Action under Tex. Code Ann. § 71.021.

6.     Christopher Cooper was survived by his wife Kennia Alejandra Genet Ulloa and his son and stepdaughter.

7.     Plaintiff Sara Dimond is a surviving sister of Christopher Cooper and the duly appointed administrator of the Estate of Christopher Cooper.

8.     In addition to the above referenced jurisdiction, this Court has jurisdiction over this cause of action because complete diversity exists among the parties as defined by 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Additionally, *Flores v. Morehead Dotts Rybak, Inc. (MDR)*, No. 2:21-CV-00265, 2022 WL 4740076, at *5 (S.D. Tex. Sept. 29, 2022), states, "When carrying out its general duty to enforce the ADA outside the context of the federal government, 29 C.F.R. § 1601.1, the EEOC uses procedures laid out in Section 1601 of the Code of Federal Regulation. Section 1601.7(a) allows charges of unlawful employment practices to be made either by the aggrieved party or by any "person, agency, or organization" acting on their behalf. 29 C.F.R. § 1601.7(a). Accordingly, this Court holds that Flores could properly file a Charge of Discrimination on behalf of Garcia's estate, and in fact did so to the satisfaction of the EEOC, (Dkt. No. 7 at 9); (Dkt. No. 7-3 at 1), thereby exhausting the administrative remedies. Flores, therefore, has standing to bring her late husband's ADA claims."

10.     Claims under the TCHRA and ADA also survive death under the Texas Survival Statute and under federal common law. *See*, *Nall v. BNSF Railway Company*, 2019 A.D. Cases 242,192, 59 NDLR P 112.

11.     Thus, Sara Dimond, as the Dependent Administrator of the Estate of Christopher Cooper, possesses the right and standing to bring her late brother's claims on behalf of the Estate under the Americans with Disabilities Act ("ADA"), the Americans with Disabilities Amendments Act (ADAAA), the corresponding state statute, Chapter 21 of the Texas Labor Code—Texas

Commission on Human Rights Act ("TCHRA"), and under the FMLA due to Stryker's discrimination, retaliation and wrongful termination of Christopher Cooper.

## PARTIES

12.    Plaintiff Sara Dimond is the duly appointed administrator of the Estate of Christopher Cooper and is an adult individual and resident of the state of Pennsylvania.

13.    Kennia Alejandra Genet Ulloa is the surviving spouse of Christopher Cooper and wrongful death beneficiary of The Estate of Christopher Cooper and a resident of the state of Texas.

14.    At all relevant times, Defendant Stryker Corporation was and is a foreign for-profit organization operating within and under the laws of Texas under corporate and multinational ownership that offers innovative products and services in Orthopedics, Medical, Surgical, Neurotechnology and Spine locally at 11500 Metric Blvd # 495, Austin, TX 78758. Stryker's registered agent can be served at the address of 1999 Bryan St., Ste. 900 Dallas, TX 75201-3136. Stryker Corporation employs sales representatives as well as sales associates, on-site specialists, team leaders, installation technicians, engineers, delivery drivers, etc., and its corporate headquarters is located in Portage, Michigan.

15.    Ronald Skinner was the supervisor of Christopher Cooper at Stryker at all relevant times and acted on behalf of Stryker as well as in his individual capacity.  Upon information and belief, Mr. Skinner is a resident of the state of Tennessee.

## FACTS

16.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

17.     Christopher Cooper ("Cooper") worked at Stryker for approximately eight years as a Stryker Sales Consultant in Las Vegas, Pittsburgh, and Austin.

18.     In 2020, Cooper requested that Stryker permit him to take disability and/or FMLA leave to check into a rehabilitation facility to treat his disability of alcoholism; however, the request was denied.

19.     In or around March 2021 and having been denied accommodation and/or FMLA requests to receive treatment, Cooper moved to Austin to continue working for Stryker in Texas.

20.     Cooper continued to struggle with the disability of alcoholism of which his supervisor, Ronald Skinner, and co-workers were aware.

21.     On or about January 2, 2023, Cooper checked himself into a rehabilitation facility Rise Recovery to receive treatment for alcoholism.

22.     Due to Stryker's job requirements and the fact that the Company denied his requests for disability and/or FMLA benefits to treat his alcoholism, Cooper checked himself out on January 6, 2023.

23.     However, on or about January 7, 2023, Cooper experienced uncontrollable jerks and, as such, checked himself into Baylor Scott & White.

24.     On or about January 9, 2023, Cooper and his sisters, Sara Dimond and Susan Cooper, had lunch with Cooper's co-worker, Hiram Tavarez.

25.     During this lunch, Tavarez agreed with Cooper's sisters that Cooper had a serious problem with alcohol, appeared jaundice and needed help; however, Tavarez informed Cooper and his sisters that Stryker does not care about employees with alcoholism and will fire them before allowing them to utilize leave to receive treatment. The four had a discussion that Cooper would

need to go tanning to hide his jaundice to comply with Stryker's requirement to attend an upcoming conference in Arizona rather than receive treatment.

26.     After the aforementioned lunch and on the same day, Skinner called Cooper to check in on him, presumably because Tavarez informed Skinner of the growing problem concerning Cooper's alcoholism, and Cooper informed his supervisor Skinner that he needed to utilize disability and/or FMLA to go to a rehabilitation facility to address his alcohol addiction.

27.     Cooper's sisters, including Sara Dimond and Susan Cooper, were present during this phone conversation on speaker phone where Cooper asked Skinner if he could utilize disability and/or FMLA leave to check into a rehabilitation facility to treat his alcoholism.

28.     During this phone call, Skinner responded to the request by stating to Cooper that Stryker does not care about employees with alcoholism and to use his job as therapy.  Skinner explained that he, himself, would also be fired if Cooper went to HR because Skinner knew that Cooper suffered from alcoholism and should have allowed the leave instead of forcing him to continue working.

29.     Skinner further ordered Cooper to attend a conference in Arizona in 2023 rather than utilize his federally mandated benefits to check into a rehabilitation facility to treat his disability.

30.     Skinner reiterated his and Stryker's position on alcoholism, depression and FMLA/disability leave at one point saying to Cooper, "Don't fuck this up for me by going to HR and requesting FMLA or disability leave, I am too close to retirement."   Skinner also mentioned that HR receives copies of all health insurance billing and would know if he checked into a rehabilitation facility further attempting to prevent Cooper from utilizing the medical leave which he desperately needed.

31.     Cooper ultimately attended the conference in Arizona in January 2023 instead of checking into a rehabilitation facility which he desperately needed to do at that point.

32.     If Stryker and/or Skinner had permitted Cooper to check into a rehabilitation in January 2023 instead of going to Arizona to entertain customers, Cooper would most likely not have died on March 11, 2023.

33.     In early to mid-February 2023, Cooper was involuntarily committed to Creekside Mental Hospital due to his disabilities of depression and alcoholism resulting in suicidal ideations.

34.     Upon information and belief, Stryker disciplined Cooper in February 2023 for suffering from these disabilities and requiring treatment resulting in time off work.

35.     Cooper remained at Creekside for three days; however, he left the facility in fear of losing his job because he had to attend a nurses' symposium on February 15, 2023 with Skinner and a co-worker, Hiram.

36.     If Stryker would have permitted Cooper to utilize disability and/or FMLA leave and remain at Creekside, he most likely would not have died on March 11, 2023.

37.     In mid-February 2023, Kennia Alejandra Genet Ulloa, Cooper's spouse, participated in a phone call with Cooper and Skinner where Cooper begged to be permitted to go to a rehabilitation facility because his alcoholism was completely unmanageable.  Skinner again denied his request stating that Cooper needed to continue doing his job well and that Cooper would, in fact, lose his job if he decided to go to rehab.  As such, Cooper continued to work as he needed to provide for his wife and children.  Again, if Stryker or Skinner had simply approved one of the many requests by Cooper to receive treatment, Cooper would still be alive.

38.     During the same timeframe on another call between Cooper and Skinner, Ms. Ulloa witnessed Cooper ask Skinner for advice on what he could do to receive help and treatment due to

Stryker's policy of firing alcoholics.  Skinner replied that Cooper should keep working and that he would be fine.  Skinner also directed Cooper to hide his problems and alcoholism from his colleagues and further stated that Cooper should never tell anyone that Skinner knew about Cooper's problems because Skinner would be fired by Stryker for knowing Cooper was an alcoholic and continually denying all of Cooper's requests for medical leave to receive treatment for his disability.  Skinner's selfishness, sole concern for his team's and his own profits, and repeated refusals to permit Cooper to receive treatment resulted in Cooper's death.

39.     On March 7, 2023, disregarding Skinner's directive not to contact HR or request medical leave, Cooper called Stryker Human Resources with his father, Daniel Cooper who is an attorney, on the conference call. Cooper told the HR employee that he wanted to apply for FMLA and/or disability benefits and leave because he had developed depression and anxiety due to his alcoholism resulting in a lack of focus at work.

40.     The HR representative advised Cooper and his father that Cooper would hear from an HR specialist in 5 to 7 days.

41.     A confirming email was sent to Cooper on or about March 7 or 8, 2023 by the HR employee with whom Cooper spoke.

42.     During the week of March 7, 2023 and on prior occasions when Cooper spoke with his father about seeking help, Cooper told Daniel Cooper that Skinner was very fearful of his own termination because he had not reported Christopher Cooper's problems to HR and because Skinner counseled Cooper not to call HR which was conduct that would lead to Skinner's termination as he completely failed to have any concern for his employee's health or well-being and also denied him his federally mandated benefits on multiple occasions.

43.    By March 10, 2023, Stryker had not approved Cooper's request for medical leave to treat his disability; nonetheless, Cooper checked into Rise Recovery.

44.    On March 10, 2023, in direct retaliation for contacting HR and requesting FMLA and/or disability leave, for checking into a rehabilitation facility, and because Cooper suffered from the disabilities of alcoholism and depression, Stryker wrongfully terminated Cooper through the following text from Skinner (who selfishly fired Cooper out of fear for his own job):



45.    Cooper responded:



## Cooper

Hello Ronnie,

It was very disappointing to receive your text message terminating me today.

About 2-3 weeks ago I was diagnosed with major depression disorder. This condition made it increasingly difficult for me to work. Early this week I could no longer fucus on performing my job. I called Stryker HR and told them about my condition and I applied for FMLA leave. I was told that I would receive contact and applicable forms in 3-5 days. I have not yet received the contact or applicable forms. I don't believe I can be terminated under these conditions.

I called HR because I could not work because I needed rest and treatment.

Chris Cooper
Stryker Sales Consultant
Patient Resuscitation and Treatment – Austin, TX
chris.cooper@stryker.com
c 412 716 0146

46.     The foregoing conduct by Stryker and its employees represents discrimination against Cooper due to his disabilities and retaliation against/wrongful termination of Cooper for

engaging in the protected activities of requesting FMLA and/or disability leave to treat his medical conditions.

47.      At all relevant times, Stryker unlawfully failed to engage in the interactive process with Cooper and refused to offer reasonable accommodations to Cooper due to his disabilities of alcoholism and depression.

48.      Skinner further directed Cooper not to contact human resources or utilize Stryker's Employee Assistance Program as needed for any medical or leave requests; otherwise, Cooper would be fired.

49.      Holding true to his word, Skinner fired Cooper within days of him contacting human resources to request leave to receive treatment for his disabilities.

50.      Cooper could have continued working at Stryker if the Company and/or Skinner had properly engaged in the interactive process with him and granted his requests for leave and/or reasonable accommodations.

51.      Christopher Cooper died on March 11, 2023 due to Stryker and Skinner unlawfully denying his requests on multiple occasions to utilize disability and/or FMLA benefits to check into a rehabilitation facility to timely treat his alcoholism and depression dating back to 2020 through March 2023.

52.      This conduct has caused Plaintiffs irreparable harm and humiliation, lost wages, medical expenses, emotional distress, damages, and constitutes clear discrimination, retaliation and wrongful termination.

53.      At all times relevant hereto, Defendant Stryker was Cooper's employer, and was an employer within the meaning of and subject to anti-discrimination and anti-retaliation statutes.

54.     Cooper was in a protected class under the ADA, ADAAA, FMLA, and Texas Commission on Human Rights Act at the time the acts of discrimination, retaliation, hostile work environment and wrongful termination occurred.

55.     At all relevant times hereto, Stryker acted or failed to act by and through its duly authorized agents, servants, and employees, who conducted themselves within the scope and course of their employment.

## COUNT I
### The Estate of Christopher Cooper, and Sara Dimond, as Decedent Administrator of The Estate of Christopher Cooper, v. Stryker Corporation
**FMLA, 29 U.S.C. §2615(a)(1), UNLAWFUL INTERFERENCE WITH, RESTRAINT AND DENIAL OF THE EXERCISE FMLA RIGHTS, & FMLA RETALIATION**

56.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

57.     As described in detail above, Christopher Cooper was an "eligible employee" as defined by the FMLA and within the meaning of FMLA, 29 U.S.C. §2611(2).

58.     Cooper also suffered from a serious health condition, and he requested and was wrongfully denied FMLA benefits.

59.     The FMLA, 29 U.S.C. §2615(a)(2), precludes employers from discriminating and retaliating against employees who have exercised rights or are entitled to such rights under the FMLA.

60.     However, Stryker failed to discharge its employer obligations because it fired Cooper for requesting and/or utilizing such FMLA benefits for alcoholism.

61.     By failing to adequately discharge its employer obligations to Cooper under the FMLA, Stryker interfered with, restrained, and denied Cooper's exercise of or attempt to exercise his rights under the FMLA.

62.     Stryker's conduct was in violation of the FMLA, 29 U.S.C. §2615, and Defendant's violations of the FMLA were not in good faith.

63.     Stryker's termination of Cooper was also in direct retaliation for him seeking FMLA benefits.

64.     As a direct result of Stryker's unlawful conduct, Cooper suffered until his untimely death, and Plaintiffs continue to suffer lost wages, lost benefits, lost retirement benefits and other lost compensation, actual monetary losses and interest on the same.

65.     Because Stryker's violations of the FMLA were not in good faith, Plaintiffs are entitled to recover liquidated damages.

66.     Plaintiffs are entitled to recover attorneys' fees and costs.

WHEREFORE, Plaintiffs seek the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

### COUNT II
*The Estate of Christopher Cooper, and Sara Dimond, as Decedent Administrator of The Estate of Christopher Cooper, v. Stryker Corporation*
### AMERICANS WITH DISABILITIES ACT (ADA) & AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT (ADAAA) DISCRIMINATION and RETALIATION

67.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

68.     Christopher Cooper was a "qualified individual with a disability" as that term is defined in the ADA and or ADAAA because he had at all times relevant hereto, a physical impairment that substantially limited/limits one or more major life activities, or because he had a record of such impairment, including all the injuries referenced above as well as resulting medical complications and death.

69.    Cooper also was a "qualified individual with a disability" as that term is defined in the ADA and/or ADAAA because he was regarded as and/or perceived by Defendant Stryker and their agents as having a physical impairment that substantially limited/limits one or more major life activities, including all the complications that stemmed from his alcoholism enabled by Stryker.

70.    However, Cooper could complete the functions of a Stryker sales consultant with reasonable accommodation; yet Defendant Stryker refused to offer any reasonable accommodation and, instead, denied all requests for accommodations and leave and fired Cooper without engaging in the interactive process.

71.    Cooper was a qualified individual under the ADA and ADAAA, yet he had the skill, experience, education, and other job-related requirements of a sales consultant, and he was capable of performing the job's essential functions with a reasonable accommodation, as demonstrated through his prior excellent performance evaluations, raises and the positive references from multiple supervisors.

72.    As such, the foregoing conduct by Defendant Stryker, including the failure to engage in the interactive process with Cooper and failure to grant Cooper any reasonable accommodation, constitutes unlawful discrimination and retaliation against Cooper because of his disability and/or perceived disability.

73.    As a result of Defendant's unlawful disability discrimination, retaliation and wrongful termination, Plaintiffs have suffered damages as set forth herein including substantial lost wages.

WHEREFORE, Plaintiffs seek the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

**COUNT III**
*The Estate of Christopher Cooper, and Sara Dimond, as Decedent Administrator of The*
*Estate of Christopher Cooper, v. Stryker Corporation*
<u>TCHRA – DISCRIMINATION, RETALIATION and WRONGFUL TERMINATION</u>

74.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

75.     This is an action arising under the provisions of the laws of the TCHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this COUNT III arises out of the same facts, events and circumstances as in the above COUNT II, and therefore judicial economy and fairness dictate that this COUNT III be brought in this same Complaint.

76.     At all times relevant, Defendant was an "employer" within the meaning of Section 21.002(8A) of the TCHRA.

77.     By engaging in the creation and fostering of a discriminatory, retaliatory and hostile work environment and by denying him accommodations and leave requests and ultimately wrongfully terminating Cooper, Defendant Stryker violated Section 21.051 of the TCHRA which prohibits discrimination and retaliation based upon disability with regard to the continuation and tenure of employment.

78.     Cooper was intentionally discriminated against on the basis of his disability, in violation of the TCHRA.

79.     The discriminatory conduct, retaliation, and wrongful termination, as described above, has caused Plaintiffs substantial harm, including but not limited to lost wages, emotional distress, mental anguish, anxiety, humiliation, embarrassment, pain and suffering, discomfort and inconvenience, and medical expenses. In addition, Defendant Stryker's failure to maintain a workplace free of harassment and its failure to take prompt remedial action to address the disability

discrimination and retaliation to which Christopher Cooper was subjected has caused Plaintiffs to suffer a loss of earnings and medical expenses.

80. The discriminatory conduct and harassment to which Christopher Cooper was subjected, as described above, would have detrimentally affected a reasonable person in his position.

81. Defendant Stryker knew or should have known about the discriminatory conduct and retaliation to which Christopher Cooper was subjected and failed to take appropriate remedial action.

82. Defendant's failure to maintain a workplace free of harassment and a failure to take prompt remedial action to address the disability discrimination and retaliation to which Christopher Cooper was subjected was intentional, malicious and in reckless indifference to his protected state rights.

83. Christopher Cooper engaged in a protected activity as described by the TCHRA, which includes seeking reasonable accommodation because of disabilities.

84. Defendant Styker was aware of Christopher Cooper's protected activities and disabilities.

85. Defendant Stryker's termination of Christopher Cooper violated the TCHRA.

86. Defendant's retaliatory conduct towards Christopher Cooper as a result of him engaging in protected activities remains a violation of the TCHRA.

87. Defendant's retaliatory conduct was intentional, malicious and in reckless indifference to Cooper's protected state rights.

WHEREFORE, Plaintiff seeks the damages, including punitive damages under the TCHRA, set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT IV
### *The Estate of Christopher Cooper, and Sara Dimond, as Decedent Administrator of The Estate of Christopher Cooper, and Kennia Alejandra Genet Ulloa, individually and as the surviving spouse of Christopher Cooper and wrongful death beneficiary of The Estate of Christopher Cooper v. Ronald Skinner*
### WRONGFUL DEATH & SURVIVAL ACTION

88.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

89.    Plaintiff Sara Dimond, as administrator of the Estate of Christopher Cooper, and Kennia Alejandra Genet Ulloa, individually and as the surviving spouse of Christopher Cooper, hereby bring these claims pursuant to the Texas Wrongful Death Statute, Tex. Code. Ann. § 71.004, against Ronald Skinner, individually and acting on behalf of Stryker, on behalf of the Estate and all those persons entitled by law to recover damages as a result of the wrongful death of Christopher Cooper.

90.    No other action has been brought to recover for Christopher Cooper's death under the aforementioned statute(s).

91.    Plaintiffs claim all available damages under the Texas Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contributions which the Plaintiffs' decedent, Christopher Cooper, would have rendered to the wrongful death beneficiaries but for his traumatic, untimely and unnatural death occurring as a result of Ronald Skinner's actions which may have been within and/or outside the scope of his employment and which are subject to the present litigation.

92.    Plaintiffs claim damages for payment of funeral and burial expenses.

93.    Plaintiffs also bring their claims as a Survival Action under the Tex. Code Ann. § 71.021, for all damages recoverable under the Statute, including but not limited to, loss of income both past and future income potential, as well as, pain and suffering prior to death, and for the

emotional distress suffered by the decedent, Christopher Cooper, from the initiation of Defendant Skinner's unlawful negligent and reckless treatment of Christopher Cooper for personal gain.

94.     When employers or supervisors know about a problem and choose not to fix it regardless of the risks involved, that can be considered gross negligence.

95.     As such, Count IV is plead by The Estate of Christopher Cooper against Ronald Skinner as a direct tortious claim against Ronald Skinner in the event he breached of his duty of care to Christopher Cooper resulting in Cooper's death and if his aforementioned conduct is determined to have been grossly negligent and within and/or outside the course and scope of his employment when he refused to allow Cooper to receive in-patient treatment for disabilities.

WHEREFORE, Plaintiffs seek the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT V**

***The Estate of Christopher Cooper, and Sara Dimond, as Decedent Administrator of The Estate of Christopher Cooper, and Kennia Alejandra Genet Ulloa, individually and as the surviving spouse of Christopher Cooper and wrongful death beneficiary of The Estate of Christopher Cooper v. Stryker Corporation***
**WRONGFUL DEATH & SURVIVAL ACTION**

96.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

97.     Plaintiffs bring the same wrongful death and survival actions as plead in Count IV against Stryker under Texas Wrongful Death Statute, Tex. Code. Ann. § 71.004, and Survival Action, Tex. Code Ann. § 71.021.

98.     Such conduct by Stryker was grossly negligent in response his requests to receive treatment.

99. When employers or supervisors know about a problem and choose not to fix it regardless of the risks involved, that can be considered gross negligence resulting in wrongful death and survival action damages for Plaintiffs.

WHEREFORE, Plaintiffs seek the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT VI
*The Estate of Christopher Cooper, and Sara Dimond, as Decedent Administrator of The Estate of Christopher Cooper, and Kennia Alejandra Genet Ulloa, individually and as the surviving spouse of Christopher Cooper and wrongful death beneficiary of The Estate of Christopher Cooper v. Stryker Corporation AND Ronald Skinner*
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

100. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

101. The aforementioned conduct of Ronald Skinner including but not limited to advising Cooper that he would be fired if he sought treatment for his alcoholism or requested FMLA benefits to seek treatment as well as stating, "Don't fuck this up for me by going to HR and requesting FMLA or disability leave, I am too close to retirement," constitutes both Skinner and Stryker acting intentionally and recklessly in an extreme and outrageous fashion causing Cooper and Plaintiffs emotional distress which remains severe.

102. As such, Plaintiffs pray that Defendants be duly cited to appear and answer herein, and that after a trial on the merits, Plaintiff receive a judgment against Defendants for the following:

    a.  in excess of $6,000,000 in actual and compensatory damages;

    b.  $300,000 in future and statutory damages;

    c.  in excess of $1,000,000 in punitive damages;

    d.  pre- and post judgment interest thereon at the maximum legal rate;

e.   costs of Court; and

f.   such other and further relief to which Plaintiffs may be justly entitled.

## PRAYER FOR RELIEF and DEMAND FOR JURY

WHEREFORE, Plaintiffs demand judgment against Defendants, and damages in excess of $75,000 as follows:

a.   That Plaintiffs be awarded actual, consequential, compensatory and punitive damages to make Plaintiffs whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiffs' damages associated with Defendant Stryker's discrimination, retaliation, harassment, hostile treatment and wrongful termination of Christopher Cooper pursuant to the ADA, ADAAA, FMLA, and TCHRA and corresponding state law claims, plus interest;

b.   That Plaintiffs be awarded compensatory damages to compensate for all costs associated with the discrimination, retaliation, harassment, hostile work environment and wrongful termination including lost wages and medical expenses;

c.   That Plaintiffs be awarded nominal damages;

d.   That Plaintiffs be awarded punitive damages in an amount sufficient to punish Defendant Stryker for its intentional, wanton and malicious conduct and to deter similar misconduct;

e.   That Plaintiffs be awarded the costs of this litigation, including reasonable attorney's fees;

f.   That the Court enter a judgment declaring Defendant Stryker's actions to be unlawful and in violation of the ADA and ADAAA;

g.   That the Court enter a judgment declaring Defendant Stryker's actions to be unlawful and in violation of the Texas Commission on Human Rights Act;

h.   That the Court award Plaintiffs compensatory damages as a result of Defendant Stryker's violations of the Texas Commission on Human Rights Act;

i.   That Defendant Stryker be required to compensate Plaintiffs for lost benefits, including profit sharing and/or pension benefits of Christopher Cooper;

j.   That Plaintiffs receive liquidated damages under the FMLA;

k.   An award of prejudgment interest;

l.  That Plaintiffs be awarded such further relief as deemed to be just and proper;

m.  That Plaintiffs be awarded survival damages, as stated above, including for the nature and extent of Christopher Cooper's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law against Stryker and/or Skinner; and

n.  That Plaintiffs be awarded all available and punitive damages under the Intentional Infliction of Emotional Distress Count.

Date:  December 13, 2023                    Respectfully Submitted,

*/s/ Alvin Adjei*
Alvin Adjei
Texas Bar: 24082259
HKM Employment Attorneys LLP
609 Main St. Suite 2500
Houston Texas 77002
(telephone) 832-356-2684
(fax:) 832-356-2684
aadjei@hkm.com

*/s/ Brian P. Benestad*
Brian P. Benestad, Esquire
Pa. I.D. 208857
HKM EMPLOYMENT ATTORNEYS LLP
220 Grant Street, Suite 401
Pittsburgh, PA  15219
412.485.0133; bbenestad@hkm.com
*Pro Hac Vice Motion For Admission Pending*

*/s/ Hugh Barber*
Hugh Barber, Esquire
WA Bar I.D. 20420
HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, WA 98101
206.278.8588; hbarber@hkm.com
*Pro Hac Vice Motion For Admission Pending*